## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

U.S. HOME CORPORATION          *
                               *
v.                             *  Civil Action No. WMN-09-2807
                               *
MARK A. POWERS et al.          *
                               *
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

### MEMORANDUM

Before the Court is Defendants' motion to dismiss.  Paper No. 4.  The motion is fully briefed.[1]  Upon a review of the pleadings and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that the motion will be granted in part and denied in part.

## I. BACKGROUND

This action arises out of an agreement executed by Plaintiff U.S. Home Corporation (U.S. Home) and Defendant M&J Capital, LLP (M&J).  Defendants Mark A. Powers and Jeffrey B. Powers (the Powers) are the sole owners of M&J.  On July 22, 2005, U.S. Home and M&J entered into an Ownership Interest Purchase Agreement (Agreement).  As part of the Agreement, U.S.

---

[1] Plaintiff has also filed a Motion for Leave To File A Sur-Reply To Defendants' Reply to U.S. Home's Opposition to Defendants' Motion To Dismiss. Paper No. 9.  The Court finds that the filing of a surreply is warranted to provide Plaintiff an adequate opportunity to respond to matters raised for the first time in the reply and thus will grant Plaintiff's motion for leave to file its surreply.

Home purchased all of M&J's membership interest in Eldersburg
Ventures (Eldersburg).  Through this membership acquisition,
U.S. Home gained ownership of Eldersburg's sole asset:
approximately 68.7 acres of land in Carroll County, Maryland
(the Property).

The Agreement contained a number of representations and
warranties made by M&J.  One of these provisions, contained in
Paragraph 12(i), represented and warranted that M&J had no
knowledge of the existence of any hazardous materials on the
Property that would subject U.S. Home to liability under federal
or state law.  The Agreement specified that this representation
was "deemed made" on the date of the Agreement and also on the
applicable closing date.  On June 30, 2006, U.S. Home closed on
the purchase of M&J's membership interests in Eldersburg.

In June 2009, U.S. Home obtained information indicating
that a substantial portion of the Property was contaminated with
lead, arsenic, and other hazardous materials.  U.S. Home also
obtained information that led it to believe that, prior to
entering into the Agreement, the Powers, as owners of M&J, had
been advised by Carroll Country authorities that the Property
was likely contaminated due to its adjacent location to land
previously used as a trap shooting range.  On October 23, 2009,
U.S. Home filed this action seeking partial rescission of the

Agreement and damages based on allegations of breach of contract, fraudulent inducement and negligent misrepresentation.

Defendants have moved to dismiss the Complaint arguing that (1) the breach of contract claim is time-barred by the survival clause of the Agreement, (2) the claims in tort are similarly time barred, (3) the Powers as individuals cannot be held liable in tort because any statements made by them were made solely in their capacity as officers of M&J, and (4) U.S. Home failed to allege any duty independent of M&J's contractual obligation that can support a claim for misrepresentation by non-disclosure.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter… to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, -- U.S. ---,---, 129 S. Ct. 1937, 1949 (2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).  "Detailed factual allegations are not required, but allegations must be more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action[.]'" Iqbal, 129 S. ct. at 1949 (quoting Twombly, 330 U.S. at 555). "[O]nce a claim has

been stated adequately," however, "it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563.  In considering such a motion, the court is required to accept as true all well-pled allegations in the Complaint, and to construe the facts and reasonable inferences from those facts in the light most favorable to the plaintiff.  Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).

## III.  DISCUSSION

### A. Contract Claims

In its complaint, U.S. Home alleges that M&J breached the warranty/representation contained in Paragraph 12(i) of the Agreement related to its knowledge of hazardous materials on the Property.  Defendants argue that regardless of whether or not such breach occurred, U.S. Home's claim is barred by the survival language contained in Section 12 of the Agreement. Defendants contend that this language limits the period for filing claims to a maximum of 18 months after the date of closing.  U.S. Home contests this interpretation of the language and states that either the language should be interpreted so that its claim is not barred or the language is ambiguous and the court should hear parol evidence to determine the parties' intent.

Pursuant to Maryland law,[2] "[a] contract is not ambiguous merely because the parties disagree as to its interpretation." Lerner Corp. v. Three Winthrop Props., Inc., 723 A.2d 560, 563 (Md. Ct. Spec. App. 1999)(internal quotes and citations omitted).  Rather, a contract is ambiguous only if it is subject to more than one interpretation when read by a reasonably prudent person.  Sy-Lene of Wash., Inc. v. Starwood Urban Retail II, 829 A.2d 540, 547 (Md. 2003).  To determine whether the language is susceptible to more than one meaning, the court must consider "the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution."  United Servs. Auto. Ass'n v. Riley, 899 A.2d 819, 833 (Md. 2006). (internal quotes and citations omitted).  The court should seek to interpret the contract as a whole and give effect "to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed."  Diamond Point Plaza L.P. v. Wells Fargo Bank, N.A., 929 A.2d 932, 952 (Md. 2007).  "If the disputed term is clear as to its meaning . . . it must be presumed that the parties meant what they expressed," and the

---

[2] Section 19 of the Agreement specifies that it "shall be construed and controlled under the laws of the State of Maryland."

court should give effect to this meaning.  Lerner Corp., 723
A.2d at 563 (internal quotes and citations omitted).

The contested survival language contained in Section 12 of
the Agreement states:

> Each of the warranties and representations contained in
> this paragraph and other paragraphs of this Agreement shall
> be deemed made as of the date of this Agreement and again
> as of each respective Closing Date. . . .  All such
> representations and warranties shall be true and correct on
> and as of the applicable Closing Date with the same force
> and effect as if made at that time.  The representations
> and warranties set forth in Paragraph . . . 12(i) . . .
> above shall survive . . . for a period of one (1) year
> following the date of Closing on such Property. . . .  None
> of Sellers' representations and warranties shall be
> affected by any investigation, verification or approval by
> any party hereto or by anyone on behalf of any party
> hereto.  Seller agrees to indemnify and hold Purchaser
> harmless for, from, and against any loss . . . incurred
> should an assertion, claim, demand, action or cause of
> action be instituted, made or taken, which is contrary to
> or inconsistent with the representations or warranties
> given by Seller herein, and which is applicable to the
> period of time during which the applicable representation
> or warranty survives as set forth above.  Any action by
> Purchaser for any breach of Seller's representations or
> warranties must be brought within six (6) months following
> the date upon which purchaser first learns of the existence
> of such breach.

U.S. Home contends that this language extends the life of
the hazardous materials representation for an additional year
following closing.  During this period, U.S. Home argues, the
Agreement creates an on-going representation and imposes an
affirmative duty on M&J to disclose any information it learns

for one year post-closing with regard to hazardous materials on the Property.  Pl.'s Opp'n 6.  The six month limitation is an independent requirement, which serves to modify the common law discovery rule.[3]  U.S. Home contends that if it discovers that M&J breached any of its representations, then it must file suit within six months of that discovery, regardless of whether it discovers the breach during or after the one year post-closing period.  Effectively, U.S. Home argues that the six month period is the only possible bar to a breach of contract action brought by U.S. Home at any time in the future.[4]

Defendants agree that the survival language extends the life of the hazardous materials representation warranty for an additional year following closing.  According to Defendants, however, this does not create an affirmative duty or create an on-going representation, as suggested by U.S. Home.  Instead, M&J's obligation is measured only at the time the Agreement was

---

[3] The common law discovery rule tolls the statute of limitations period so that it does not begin to accrue until the time the plaintiff discovers, or should have discovered through the exercise of reasonable diligence, the injury.  Ver Brycke v. Ver Brycke, 843 A.2d 758, 775 (Md. 2004).  The contractual limitation modifies this rule by requiring a claim to be brought within six months of discovery instead of giving the full statutory period to file the claim after discovery.

[4] U.S. Home's claim would be barred if the claim was brought more than six months after U.S. Home discovered the potential breach.  Under this interpretation, M&J would be subject to potential liability for an indefinite period of time.

executed and at closing.  Defs.' Reply 7.  This means that M&J
has represented that at the execution of the Agreement and at
closing it had no knowledge regarding hazardous materials in
relation to the Property.  The one year period, then, is the
time during which the representation survives for purposes of
U.S. Home discovering a breach and making a claim for breach of
representation.  The six month discovery period works in
conjunction with the one year survival period so that U.S. Home
has a one year period to discover a breach, but if and when it
discovers a breach, U.S. Home must bring a claim within 6 months
of that discovery.

     Upon a reading based on the plain meaning of the Agreement,
the interpretation offered by Defendants is the only reasonable
interpretation.  The language clearly and unambiguously states
that the representations "shall be deemed made" on the date of
execution and on the date of closing, and "shall be true and
correct on and as of" the closing date.  There is no language
suggesting that the representations will continue to be made
after the closing date.

     In considering this language along with the fact that the
Agreement is essentially a land transaction, the meaning of the
survival language becomes even clearer.  This language is
important in a contract for the sale of land because it
preserves for the buyer the warranties and representations

contained in the agreement that would otherwise merge with the deed at closing and disappear.  See Stevens v. Milestone, 57 A.2d 292, 293 (Md. 1948) (noting that "by the execution and acceptance of a deed in pursuance of an agreement for the sale of land, such agreement of sale thereby becomes null and void, except where the agreement contains covenants collateral to the deed")(internal citations omitted).  Absent the survival language, upon closing U.S. Home would be foreclosed from bringing a breach of warranty or representation claim because that warranty or representation would cease to exist.  Instead of imposing an affirmative post-closing obligation on M&J, the survival language avoids extinguishment and preserves the existing warranties and representations, giving U.S. Homes an additional, post-closing time period during which it may detect and make a claim for breach.

This interpretation is fully consistent with other provisions of the contract that speak to the timing of the warranties and representations.  The "Seller's Default" provision located in Section 10 states, in pertinent part, that "Seller shall be in default hereunder if: (i) any representation or warranty made by the Seller herein is or becomes false in any material respect . . ."  Because this default language is contemporaneous with the warranties made at execution, the seller is in default if the warranty "is" false.  When the

warranty is reasserted at the future closing date, seller will be in default if that warranty "becomes false."  This language is consistent with the fact that M&J's warranties and representations are measured both at execution of the Agreement and at closing.  This language protects the buyer during the 11 month period between execution of the Agreement and closing, a period during which the seller's state of knowledge may change.

Similarly, the indemnification language contained in section 12 (quoted fully above) is also fully consistent with the Court's interpretation of the unambiguous language.  The language provides that M&J must indemnify U.S. Home for any loss inconsistent with the warranties if such loss is "applicable to the period of time during which the applicable representation or warranty survives."  This language plainly means that M&J will indemnify U.S. Home for a claim made by a third party based on one of the warranties in the Agreement if the claim is made during the survival period specified for that particular warranty.[5]  As acknowledged by U.S. Home, "it is clear that the parties intended . . . to permit U.S. Home to bring an action based on M&J's material breach of a representation or warranty

---

[5] Section 12 of the Agreement contains twenty warranties/representations made by the Seller.  All of the warranties, except one, have a specified survival period, which is either (1) one year following closing, (2) the length of the applicable statute of limitations, or (3) indefinitely.

which <u>existed</u> at any time before the end of the 'survival'
period."  Pl.'s Opp'n 14 (emphasis in original).  Limiting the
time during which an indemnification claim may be brought is
consistent with the purpose of the survival clause because,
while it protects the buyer by preventing these claims from
dying upon closing, it allows the seller to limit its potential
liability to a finite time period and better allows the seller
to evaluate its potential risk as part of the transaction.

U.S. Home has proposed several other arguments regarding
the reasonableness of Defendants' interpretation that are
similarly without merit.  U.S. Home contends that "the language
of the Agreement's 'survival' provisions does <u>not</u> objectively
reflect any intent to limit the time in which U.S. Home is
required to <u>discover</u> M&J's misrepresentations . . . [because]
the survival provisions say nothing whatsoever about U.S. Home
being required to discover the falsity of M&J's representations
within a year of Closing."  Pl.'s Opp'n 11.  The absence of the
specific language suggested by U.S. Home, however, does not
foreclose the possibility that an objective reading of the
Agreement will find a limitation.  While such language may have
been helpful and more explicit than the language contained
within the Agreement, it is unrealistic to expect a contract to
be drafted for every possible occurrence and contingency.
Moreover, the language that is present in the survival clause is

sufficiently clear, when considered in the context of the surrounding language and the circumstances of the transaction, to convey the unambiguous meaning and to render the addition of this suggested language superfluous.

Based on the time limitations contained in the unambiguous language of the Agreement, the representation made by M&J regarding its knowledge of hazardous materials expired on June 30, 2007, one year after the closing date for the Property. U.S. Home does not allege that it detected a potential breach until June 19, 2009, nearly two years later.  Thus, U.S. Home's claims for breach of contract are time barred.[6]

---

[6] U.S. Home cites Martens Chevrolet, Inc. v. Seney, 439 A.2d 534 (Md. 1982) and Wolf v. Ford, 644 A.2d 522 (Md. 1994) for the proposition that a contract may not contain an exculpatory clause that allows a party to escape liability for fraudulent conduct.  Pl.'s Opp'n 17-19.  Assuming this characterization is accurate, these cases are distinguishable because they dealt with claims for tort liability, not claims for breach of contract.  Moreover, the survival provision in the Agreement does not completely exculpate M&J from liability because M&J may in fact be held liable for a breach of the hazardous materials representation during the one year post-closing period.  U.S. Home's characterization of the survival provision as "exculpatory'" is erroneous because plaintiff incorrectly relied on a case applying Pennsylvania law.  Pl.'s Opp'n 19 n.7 .  Under Maryland law, courts that have recognized the right to contractually modify the limitations period for a cause of action have not characterized this modification as "exculpatory."  College of Notre Dame of Maryland, Inc. v. Morabito Consultants, Inc., 752 A.2d 265, 271 (Md. Ct. Spec. App. 2000).

**B. Tort Claims**

U.S. Home has also alleged that M&J and its owners, the
Powers, are liable for the torts of fraudulent inducement and
negligent misrepresentation.  Defendants have argued that these
claims in tort are also time barred by the survival provision in
the Agreement.

To support its argument, Defendants cite two cases in which
tort claims were barred by contractual provisions.  In College
of Notre Dame of Maryland, Inc. v. Morabito Consultants, Inc.,
the contractual language specified the time for accrual for
"acts or failures to act" and so barred the claims for
negligence and breach of contract.  752 A.2d 265, 267 (Md. Ct.
Spec. App. 2000).  Similarly, in Harbor Court Assocs. v. Leo A.
Daly Co., the contractual limitation applied to "all acts or
failures to act" and stated that "any alleged cause of action
shall be deemed to have accrued in any and all events" not later
than a specified time.  179 F.3d 147, 148 (4th Cir. 1999).  This
limitation served to bar both breach of contract and tort claims
brought by Harbor Court.  Id. at 153.

Defendants cited these cases to show that clauses limiting
the statute of limitations have been upheld in Maryland and have
been used to bar both contract and tort claims.  These cases,
however, are readily distinguishable because the survival clause
at issue here is much more narrowly written.  Instead of setting

13

a time for accrual for "all" or "any" act or failure to act,
whether tortious or contractual, the survival clause only serves
to extend the life of the contractual warranties and
representations for a specified time post-closing.  This
effectively limits the time in which U.S. Home may bring a
contract claim for breach of the warranties or representations,
but does not limit non-contractual claims.  Construing the
survival provision to limit the time during which tort claims
may be brought is contrary to its narrow purpose.  As such, U.S.
Home's claims for fraudulent inducement and negligent
misrepresentation are not time barred.

Defendants next challenge whether the tort claims can stand
against the Powers as individual defendants.  They argue that
the claims fail because the complaint does not allege that the
Powers themselves made any misleading representations, but
instead relies solely on the representations made by M&J in the
Agreement.

Whether the allegations in the Complaint are sufficient to
state a claim against the Powers as individuals must be analyzed
separately for each cause of action because different pleading
requirements apply: the claims for fraudulent inducement must be
pled with particularity, Fed. R. Civ. P. 9(b), while the claims
for negligent misrepresentation need not satisfy this heightened

pleading standard.  Balt. County v. Cigna Healthcare, 238 Fed.
App'x. 914, 921 (4th Cir. 2007).

Rule 9(b) requires that the complaint allege "the time,
place, and contents of the false representations, as well as the
identity of the person making the misrepresentation and what he
obtained thereby." Harrison v. Westinghouse Savannah River Co.,
176 F.3d 776, 784 (4th Cir. 1999).  "A complaint fails to meet
the particularity requirements of Rule 9(b) when a plaintiff
asserts merely conclusory allegations of fraud against multiple
defendants without identifying each individual defendant's
participation in the alleged fraud." Adams v. NVR Homes, Inc.,
193 F.R.D. 243, 250 (D. Md. 2000) (citations omitted).
Notwithstanding, the Fourth Circuit has advised that "a court
should hesitate to dismiss a complaint under Rule 9(b) if the
court is satisfied: (1) that the defendant has been made aware
of the particular circumstances for which [it] will have to
prepare a defense at trial, and (2) that plaintiff has
substantial prediscovery evidence of those facts." Harrison,
176 F.3d at 784 (internal quotations and citations omitted).

The specific facts pleaded in the complaint focus on the
representations made in Section 12(i) of the Agreement.  Compl.
¶¶ 8-13.  By the terms of the Agreement, these representations

were only made by the corporate entity, M&J.[7]  The only

indication that U.S. Home relies on anything other than the

Section 12(i) representation for its fraudulent inducement

claims is the language within the counts themselves: "[i]n

connection with the sale . . . the Powers and M&J made false

representations . . . and omitted to inform U.S. Home" regarding

possible contamination on the Property.  Compl. ¶¶ 24, 29

(emphasis added).   This language may be implying that the

Powers made statements during negotiations or other interactions

that misrepresented their state of knowledge.   Nonetheless, this

intimation is not enough.   Without any specific allegations

stating what was said (or omitted), when and by whom during

interactions occurring "in connection with the sale", the Powers

Defendants are not on notice of the circumstances for which they

will need to prepare a defense.   Accordingly, the fraudulent

inducement claims pleaded against the Powers as individuals will

be dismissed.[8]

---

[7] The Agreement specifies that the representations and warranties
contained in section 12 are made by the "Seller".   The preamble
designates "M&J Capital, LLP" as "Seller."

[8] This holding does not mean that it is impossible for the Powers
to be held liable as individuals for statements made in their
capacity as representatives of M&J.   Defendants have even
conceded this fact.   Defs.' Mot. to Dismiss 12 ("corporate
officers can be personally liable for those torts that they
personally commit even though committed in the name of an
artificial body.").   Rather, this holding speaks to the

The facts pleaded within Counts III and IV (those alleging negligent misrepresentation), however, are sufficient for these claims to survive.  The complaint contains allegations that the Powers obtained personal knowledge of the contamination through attendance at public hearings and through receipt of correspondence, and that they had such knowledge prior to execution of the Agreement and prior to reassertion of the warranties and representations at closing.  Compl. ¶¶ 16-20. The allegations in the Complaint are sufficient to establish that the Powers were participants in the wrongful act and so may be held personally liable.  See Tedrow v. Deskin, 290 A.2d 799 (Md. 1972) (denying motion to dismiss negligent misrepresentation claim asserted against individual defendants when complaint alleged that individuals sold car to plaintiff with knowledge of the original mileage and conspired to alter and misrepresent the mileage, despite the fact that the contract for sale was between plaintiff and the car dealership, a corporate entity).

Finally, Defendants argue that the negligent misrepresentation claims cannot survive because U.S. Home failed to allege a duty arising out of anything other than the contract.  Under the doctrine of caveat emptor, Defendants

_____

sufficiency of the factual allegations in the complaint in light of the requirements of Rule 9(b).

correctly state that merely entering into a commercial real estate transaction that is negotiated at arms-length does not create a duty to disclose material facts.  <u>Rosenblatt v. Exxon Co., USA</u>, 642 A.2d 180, 188 n.7 (Md. 1994).  Notwithstanding, a duty may arise "out of the circumstances surrounding or attending the transaction."  <u>Jacques v. First Nat'l Bank of Maryland</u>, 515 A.2d 756, 759 (Md. 1986) (internal citations omitted).  Moreover, "[w]hen dealing with claims of economic loss due to negligent misrepresentation, a plaintiff is entitled to demonstrate that a duty of care exists by establishing an intimate nexus or special relationship between parties."  <u>Cigna Healthcare</u>, 238 Fed. App'x. at 922.  For example, a duty is created if a party makes "an active misstatement of fact, or only a partial or fragmentary statement of fact, which misled the purchaser to his inquiry."  <u>Walsh v. Edwards</u>, 197 A.2d 424, 427 (Md. 1964).

In the Complaint, U.S. Home alleges that M&J breached a duty because Section 12(i) of the Agreement contained an affirmative statement that M&J had no knowledge regarding the presence of hazardous materials on the Property.  Furthermore, the complaint alleges that M&J did have such knowledge and failed to inform U.S. Home.  These allegations are analogous to the active misstatements in <u>Walsh</u>.

## IV.   CONCLUSION

For these reasons, Defendants' Motion to Dismiss will be granted in part and denied in part.  The motion to dismiss will be granted as to Counts V and VI against all Defendants and as to Counts I and II against the Powers individually.  The motion to dismiss Count I and II against M&J and Counts III and IV against all Defendants will be denied.  A separate order will issue.


                                    /s/
                              _____
                              William M. Nickerson
                              Senior United States District Judge


Dated: March 25, 2010